| | | |
|---|---|---|
| **DENNIS CURTIS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:13CV293 PLC** |
| | ) | |
| **IAN WALLACE and** | ) | |
| **CHRIS KOSTER,**[1] | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review and final disposition of a petition for a writ of habeas corpus filed by Dennis Curtis (Petitioner) pursuant to 28 U.S.C. § 2254. (ECF No. 1). The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 13). For the reasons set forth below, Petitioner's petition for writ of habeas corpus is denied.

## I.     Background

A jury found Petitioner guilty of first-degree murder, attempted first-degree robbery, and two counts of armed criminal action. (Resp. Ex. B at 68-71). The trial court sentenced him to concurrent terms of life imprisonment without parole for first-degree murder and life imprisonment for each count of armed criminal action. (Id.). The trial court also sentenced

---

[1] Because Petitioner is subject to consecutive sentences imposed by the trial court for the conviction he is challenging in this federal habeas proceeding, the Court will add as a named Respondent Chris Koster, the Attorney General of the State of Missouri. See Rule 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts.

Petitioner to a fifteen-year sentence for attempted robbery, to be served consecutively to his other sentences.  (Id.).

The evidence presented at trial established that, on December 12, 2006, Petitioner drove to a novelty store with Zedric Ward, Dejuan Burrell, and Travis Ratliff.[2]  Petitioner and Mr. Ward entered the store carrying handguns.  Mr. Ward remained near the door, and Petitioner proceeded to the back of the store, where employee Jesse Ward (Victim) was talking to two customers.  Petitioner and Mr. Ward ordered the three men to "empty your wallets," and Petitioner shot Victim five times.  Victim sustained a fatal gunshot to the head, as well as three shots to his chest and one to his left shoulder.   After the shooting, Petitioner and Mr. Ward ran back to the car where Mr. Burrell and Mr. Ratliff were waiting, and they drove away.

Two days later, Mr. Burrell went to a police station, identified the other men involved, and reported that Petitioner shot Victim.  Police officers arrested Mr. Ward and Mr. Ratliff on December 15, 2006, and Petitioner turned himself in to the police on December 21, 2006.

At the trial in November 2008, the State presented the testimony of Mr. Ward, Mr. Burrell, Mr. Ratliff, the two customers present during the shooting, the medical examiner, and several investigating officers.  (Resp't Ex. A).  After the close of the State's evidence and defense counsel's announcement that Petitioner wished to testify, the trial court held a bench conference to discuss the admissibility of evidence that, subsequent to turning himself in, Petitioner declined to make a statement.  (Id. at 493-94).  Defense counsel argued that evidence of post-arrest silence was inadmissible and irrelevant.  (Id. at 493).  The prosecutor countered

---

[2] These facts are taken substantially from the supplemental memorandum accompanying the Missouri Court of Appeals' decision in Petitioner's direct appeal.  (Resp. Ex. J).  "[A] determination of a factual issue made by a State court shall be presumed to be correct" and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

that, if the defense presented evidence that Petitioner turned himself in to the police "to show his cooperation," then the State "should be allowed to comment upon how he didn't actually cooperate when he failed to make a statement." (Id. at 494). The trial court ruled that "the mere fact that he turned himself in doesn't open the door to post-arrest silence. It may, however, allow [the prosecutor] to inquire as to why, the answer to which might open the door." (Id.).

The defense presented two evidence technicians, Petitioner's girlfriend, and Petitioner. (Id. at 478-532). On direct examination, Petitioner testified that he was home with his girlfriend at the time of the shooting on December 12, 2006. (Id. at 516). Petitioner stated that he went to the Justice Center and then to the police station on December 21, 2006 because his girlfriend's mother "told me she seen my face on TV and I didn't know what for and I wanted to come down and see what was, what was going on." (Id. at 512). Petitioner explained that, when he arrived at the police station, "I stated my name and they asked me what I am here for. I tell them. And they like, we don't know what you talking about. But I demanded to stay until I got things cleared up." (Id.).

Prior to cross-examining Petitioner, the prosecutor approached the bench and asked the trial court whether "the door has been opened" to evidence of Petitioner's refusal to make a statement. (Id. at 517). Defense counsel renewed his objection, and the trial court overruled it on the ground that Petitioner had opened the door to evidence of post-arrest silence. (Id.). On cross-examination, the prosecutor questioned Petitioner as follows:

> [PROSECUTOR]: And it's also your testimony that you went down[town] to straighten things up down at headquarters?
> [PETITIONER]: Just to see what was going on.
> [PROSECUTOR]: But I think you testified on direct with your attorney you said I demanded to stay until things cleared up?
> [PETITIONER]: Yes.
> [PROSECUTOR]: Okay. You refused to make a statement, isn't that true?
> [PETITIONER]: Yes.

(Id. at 527). When the prosecutor asked Petitioner why he hadn't told the interviewing officer, Det. Jeffrey Stone, that he was at home with his girlfriend at the time of the shooting, Petitioner claimed, "I told him that I was wasn't there at all, I was with my girlfriend. And he never wrote it on paper or nothing." (Id. at 529). Petitioner asserted that Det. Stone did not document his alibi because "he didn't believe me." (Id. at 530). In rebuttal, the State presented Det. Stone, who testified over defense counsel's objection that, when he interviewed Petitioner on December 12, 2006, Petitioner neither offered an alibi nor made "any statements." (Id. at 537-38).

After the jury found him guilty on all four counts and the trial court denied his motion for judgment of acquittal or a new trial, Petitioner filed an appeal challenging the: (1) sufficiency of the evidence establishing the element of deliberation required for a first-degree murder charge; and (2) admission of evidence of Petitioner's post-arrest, post-Miranda silence. (Resp't Ex. C). The Missouri Court of Appeals affirmed the verdict, finding that: (1) evidence that Petitioner carried a handgun into the store and inflicted numerous wounds upon Victim was sufficient to support an inference that Petitioner coolly reflected and deliberated on the shooting; and (2) the State adduced evidence of Petitioner's post-Miranda silence for the purpose of rebutting evidence that he cooperated with police, and not for the impermissible purpose of providing substantive evidence of his guilt. (Resp't Ex. F).

Following the denial of his direct appeal, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. (Resp't Ex. G at 3-18). Petitioner's post-conviction counsel filed an amended Rule 29.15 motion, claiming that counsel provided ineffective assistance by: (1) eliciting evidence of Petitioner's post-Miranda silence; (2) failing to object to improper impeachment of Mr. Ratliff; (3) failing to impeach Mr. Ward by questioning his testimony about the caliber of the gun in his possession; and (4) failing to raise

the issue of Petitioner's distinctive appearance.  (Id. at 29-45).  Additionally, Petitioner asserted

that he had obtained newly discovered evidence because Mr. Ratliff had recanted his testimony

that Petitioner was present at the time of the shooting.  (Id.).  The post-conviction motion court

denied Petitioner's Rule 29.15 motion without an evidentiary hearing.  (Resp't Ex. G at 46-52).

Petitioner appealed the denial of his post-conviction motion to the Missouri Court of

Appeals.  (Resp't Ex. H).    On appeal, Petitioner argued that the motion court erred in denying

his Rule 29.15 motion without an evidentiary hearing because trial counsel was ineffective in:

(1) opening the door to evidence of his post-Miranda silence; (2) failing to object to the improper

impeachment of Mr. Ratliff; (3) failing to impeach Mr. Ward with his inconsistent testimony

regarding the caliber of his gun; and (4) failing to present evidence of Petitioner's distinctive

appearance.  (Id.).  The Missouri Court of Appeals affirmed the denial of Petitioner's Rule 29.15

motion.  (Resp't Ex. J).

## II.        Petitioner's Grounds for Federal Habeas Relief

In the present habeas petition, Petitioner asserts the following thirteen grounds for relief:

1. The trial court erred in denying Petitioner's motion for judgment of acquittal  on the first-
degree murder count because the State presented insufficient evidence from which a
reasonable juror could find that he deliberated before shooting Victim;

2. The trial court erred in admitting evidence of Petitioner's post-arrest, post-Miranda
silence;

3. Trial counsel provided ineffective assistance by eliciting testimony that "allowed the
State to comment on [Petitioner's] post-Miranda silence;

4. The post-conviction motion court erred in denying the claim set forth in Petitioner's
ground three;

5. Trial counsel provided ineffective assistance by failing to object to the State's
impeachment of Mr. Ratliff;

6. The post-conviction motion court erred in denying the claim set forth in Petitioner's
ground five;

7. Trial counsel provided ineffective assistance in failing to impeach Mr. Ward "regarding the caliber of the gun that he was in possession of on December 12, 2006";

8. The post-conviction motion court erred in denying the claim set forth in Petitioner's ground seven;

9. Trial counsel provided ineffective assistance by failing to raise the issue of Petitioner's distinctive appearance;

10. The post-conviction motion court erred in denying the claim set forth in Petitioner's ground nine;

11. Petitioner "is actually innocent due to newly discovered evidence regarding the recantation statements of State witness Travis Ratliff";

12. Post-conviction appellate counsel provided ineffective assistance by failing to allege in the amended Rule 29.15 motion that he received ineffective assistance of counsel because trial counsel did not investigate and interview the 911 caller; and

13. Post-conviction appellate counsel provided ineffective assistance by failing to allege that trial counsel was unprepared for trial "due to insufficient funds, inadequate staffing and training, and workload, all of which go to constitute the total breakdown of the Missouri Public Defender System that employed trial counsel."

(ECF No 1). Respondents assert that grounds 9 and 10 are procedurally barred and Petitioner defaulted on grounds 7, 8, 12, and 13. (ECF No. 9). Respondents further contend that all of Petitioner's grounds lack merit. Id.

### III.    Standard of Review under 28 U.S.C. § 2254

"In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] to exercise only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). If the state court's decision is not "contrary to" clearly established law, then the "unreasonableness" standard applies, which is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). A state court decision involves an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Taylor, 529 U.S. at 407-08.

A state court's factual determinations are presumed correct and will stand unless the petitioner rebuts this presumption with clear and convincing contrary evidence. 28 U.S.C. § 2254(e)(1); Grass v. Reitz, 749 F.3d 738, 743 (8th Cir. 2014). Similarly, federal courts afford great deference to a state court's credibility findings. Smulls v. Roper, 535 F.3d 853, 864 (8th Cir. 2008) (en banc).

## IV. Discussion

### A. Ground one – Insufficient evidence of deliberation.

In ground one, Petitioner claims that the trial court erred in denying his motion for a judgment of acquittal at the close of all evidence because the State failed to prove beyond a reasonable doubt that Petitioner committed murder in the first-degree. More specifically,

Petitioner contends that "there was insufficient evidence from which a reasonable juror could find Petitioner deliberated or coolly reflected for any length of time before [Victim] was shot and killed . . . ." In response, Respondents assert that the State presented sufficient evidence to support a finding that Petitioner "either coolly reflected on the possibility of killing somebody before entering the store or coolly reflected on the possibility of killing [Victim] while aiming his gun at [Victim] and shooting him multiple times."

A reviewing federal habeas court may set aside the jury's verdict on the ground of insufficient evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Nash v. Russell, 807 F.3d 892, 897 (8th Cir. 2015) (quoting Jackson v. Virginia, 443 U.S. 307, 324 (1979)). Accordingly, "[i]n determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, [the court] view[s] the evidence in the light most favorable to the prosecution and decide[s] whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime." Weston v. Dormire, 272 F.3d 1109, 1111 (8th Cir. 2001). "What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." Cavazos v. Smith, 132 S. Ct. 2, 4 (2011). "The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Id. (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)). "[The] AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (internal quotations and citations omitted).

Under Missouri law, "[a] person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." Mo. Rev. Stat. § 565.020.1. Deliberation means "cool reflection for any length of time no matter how short,"

8

Mo. Rev. Stat. § 565.002(3), and it may be proven by indirect evidence and inferences reasonably drawn from the circumstances surrounding the killing. State v. Rousan, 961 S.W.2d 831, 841 (Mo. banc 1998).

At Petitioner's trial, the State presented Mr. Ward, who testified that, on the morning of December 12, 2006, he observed Mr. Ratliff hand Petitioner a gun and, when they stopped at the novelty store, Petitioner "said he wanted to buy a T-shirt and then he said, 'I will hit him' . . . ." (Resp't Ex. A at 251-52). Mr. Ward stated that he heard Petitioner fire his gun and saw him run out of the store. (Id. at 255-56). When Petitioner and Mr. Ward returned to the car, Petitioner said "[t]hat he killed him" and "that he had blood on his hand." (Id. at 257).

Mr. Ratliff testified that he was driving the car on the morning of December 12, 2006, and Petitioner instructed him to stop at the novelty store, where Petitioner and Mr. Ward exited the car. (Id. at 318, 324). Although Mr. Ratliff denied seeing either Petitioner or Mr. Ward enter the store, he observed both men running out. (Id. at 325). Mr. Burrell, a passenger in the car on the day of the shooting, testified that Defendant requested Mr. Ratliff stop at the novelty store and went inside the store with Mr. Ward. (Id. at 444). Mr. Burrell stated that, while waiting in the car, he heard gunshots and observed Petitioner and Mr. Ward run from the store holding guns. (Id. at 445-46).

Finally, the assistant medical examiner for the City of St. Louis testified that Victim suffered "multiple gunshot wounds," including one to the head, three to the chest, and one to the shoulder. (Id. at 297, 302-304). The medical examiner stated that Victim first sustained the gunshot wound to the head, and the gunshot wounds to Victim's chest were "consistent with someone standing over [Victim] and firing into his chest." (Id. at 304).

After trial, Petitioner filed a motion for a judgment of acquittal or a new trial, arguing that the State failed to prove beyond a reasonable doubt that he "deliberated upon the matter" of killing Victim. (Resp't Ex. B at 64-67). The trial court denied Petitioner's motion, and Petitioner appealed. (Resp't Ex. E).

In affirming Petitioner's conviction, the Missouri Court of Appeals explained that the following circumstantial evidence may prove deliberation: "a defendant's carrying of a handgun to the scene of a criminal enterprise"; "the infliction of numerous wounds on a victim"; and "a decision to continue assaulting a victim when he is no longer resisting." (Resp't Ex. F). Based on a review of the record on appeal, the court of appeals held:

> There was evidence that [Petitioner] said, "I will hit him," then walked into the novelty store with a loaded weapon, fired a fatal shot that downed the victim, then fired additional shots in the victim's chest. This evidence was sufficient to support an inference that [Petitioner] coolly reflected and deliberated on the shooting. [citations omitted].

(Resp't Ex. F). The court concluded: "There was sufficient evidence from which a reasonable juror could have found that [Petitioner] deliberated." (Id.).

After reviewing the record, the court finds that sufficient evidence existed for a rational trier of fact to have found that Petitioner deliberated before shooting and killing Victim. The Missouri Court of Appeals' determination that that there was sufficient evidence from which a reasonable juror could have found that Petitioner deliberated was neither "contrary to" nor an "unreasonable application of" clearly established federal law. See 28 U.S.C. § 2254(d)(1). Furthermore, Petitioner has not shown that the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." See 28 U.S.C. § 2254(d)(2). Petitioner's ground one is denied.

**B. Ground two– Evidence of post-arrest silence (trial court error).**

In ground two, Petitioner claims that the trial court erred in admitting testimony from Petitioner and Det. Stone about Petitioner's post-arrest, post-Miranda silence. Respondents counter that the Missouri Court of Appeals reasonably applied federal law governing the use of post-Miranda silence when it held that Petitioner opened the door to admission of such evidence.

A criminal defendant has the constitutional right to remain silent when taken into custody. Miranda v. Arizona, 384 U.S. 436, 444 (1966). In Doyle v. Ohio, the United States Supreme Court held that, once a person in custody is advised of his right to silence pursuant to a Miranda warning, that person's silence cannot be offered to impeach an exculpatory story offered at trial. 426 U.S. 610, 619 (1976).

Importantly, Doyle does not bar all references to post-Miranda silence. Id. at 620 n.11. The Court noted that "the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest." Id. "In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest." Id. Citing this exception, courts have held that, "[w]hen a defendant has alleged or created an impression of general cooperation with police after arrest, a court may allow the prosecution to elicit testimony of the defendant's post-arrest silence to rebut the impression of full cooperation." United States v. Shue, 766 F.2d 1122, 1130 (7th Cir. 1985). See also United States v. Reveles, 190 F.3d 678 (5th Cir. 1999) (abrogated on other grounds by United States v. Vargas-Ocampo, 747 F.3d 299 (5th Cir. 2014)); Phelps v. Duckworth, 772 F.2d 1410 (7th Cir. 1985).

In this case, Petitioner testified on direct examination that he was home with his girlfriend at the time of the shooting and that he voluntarily turned himself in when he learned he was wanted by the police. (Resp't Ex. A at 512). According to Petitioner, he went to the Justice Center and then to the police station, where he provided his name and "demanded to stay until I got things cleared up." Id. The trial court found that Petitioner's testimony, which suggested he cooperated with the police, opened the door to evidence of his post-arrest silence and permitted the prosecutor to cross-examine Petitioner about his refusal to make a statement. Id. at 517. When the prosecutor asked Petitioner why he did not tell Det. Stone that he was home with his girlfriend, Petitioner stated, "I told him that I wasn't there at all, I was with my girlfriend. And he never wrote it on paper or nothing." Id. at 529. According to Petitioner, Det. Stone did not write down his alibi because "he didn't believe me." Id. On rebuttal, Det. Stone testified that Petitioner did not "indicate to [him] that he was anywhere on December 12th of 2006." Id. at 537. Det. Stone also stated that, after he read Petitioner his Miranda rights, he offered Petitioner the opportunity to make a statement, but Petitioner declined to do so. Id.

In his direct appeal, Petitioner claimed the trial court erred in admitting evidence of his post-Miranda silence through the testimony of Petitioner and Det. Stone. (Resp't Ex. C). The Missouri Court of Appeals concluded that the trial court did not violate Doyle because Petitioner opened the door to evidence of his post-Miranda silence. (Resp'd Ex. F). The court explained that Petitioner's testimony "that he went to two places to speak to law enforcement, he demanded to know what was going on, and wanted to stay until he got things cleared up . . . created the impression that he was fully cooperating with the police in their investigation." (Id.). As a result, the prosecutor was entitled "to a full and not just a selective development of the subject."

(Id.) (citing <u>State v. White</u>, 941 S.W.2d 575, 581 (Mo.App.E.D. 1997) and <u>United States v. Fairchild</u>, 505 F.2d 1378, 1383 (5th Cir. 1975)).

The Missouri Court of Appeals further found that the trial court did not err in admitting Det. Stone's testimony about Petitioner's refusal to make a statement because Petitioner widened the door when he testified that: (1) he informed Det. Stone that he was with his girlfriend at the time of the shooting; and (2) Det. Stone failed to make note of this. (<u>Id.</u>) The court concluded that, because the prosecutor's purpose for adducing evidence of Petitioner's post-<u>Miranda</u> silence was to impeach his testimony that he cooperated with police and provided an alibi, and not as substantive evidence of guilt, there was no <u>Doyle</u> violation and, thus, no trial court error. (<u>Id.</u>).

Under AEDPA habeas review, the Court considers whether the Missouri Court of Appeals' decision "was an objectively unreasonable application of Supreme Court precedent[.]" <u>Middleton v. Roper</u>, 498 F.3d 812, 820 (8th Cir. 2007). The Missouri Court of Appeals' conclusion that the trial court did not err in admitting evidence of Petitioner's post-<u>Miranda</u> silence was an objectively reasonable application of the Supreme Court's decision in <u>Doyle</u>. Because the state court's ruling on Petitioner's claim of error was not contrary to or an unreasonable application of federal law and was not based upon an unreasonable determination of the facts, Petitioner's ground two is denied.

### C. Ground three – Evidence of post-arrest silence (ineffective assistance).

In ground three, Petitioner claims that defense counsel provided ineffective assistance of counsel by opening the door to evidence of his post-<u>Miranda</u> silence. Respondents counter that Petitioner's narrative answers on direct examination, and not defense counsel's questioning, opened the door.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687, 688 (1984). "The first prong requires a showing 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" White v. Dingle, 757 F.3d 750, 752 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 687). "The second prong requires a showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 753 (quoting Strickland, 466 U.S. at 694).

"[W]hen reviewing an ineffective-assistance-of-counsel claim, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Woods v. Donald, 135 S.Ct. 1372, 1375 (2015) (quoting Strickland, 466 U.S. at 689). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Harrington v. Richter, 562 U.S. 86, 105 (2011). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (internal citations omitted).

The record reflects that, in a bench conference during Petitioner's jury trial, the trial court asked counsel for both parties their positions on whether Petitioner's anticipated testimony that he turned himself in would open the door to evidence of his post-Miranda silence. Defense counsel argued that the fact that Petitioner turned himself in was "relevant to credibility of everyone involved," but Petitioner's post-Miranda silence was inadmissible. After hearing arguments, the trial court held that Petitioner could testify that he turned himself in without opening the door to evidence of his refusal to make a statement. However, the court cautioned

that such testimony "may, however, allow [the prosecutor] to inquire as to why, the answer to which might open the door." During his direct examination of Petitioner, defense counsel asked Petitioner how and why he went to the police station and what he did when he arrived. Petitioner answered: "I come in . . . I state my name and they asked me what am I here for. I tell them. And they like, we don't know what you talking about. But I demanded to stay until I got things cleared up. . . ."

In his motion for post-conviction relief, Petitioner claimed that trial counsel was ineffective in eliciting testimony that permitted the State to comment on his post-<u>Miranda</u> silence. (Resp't Ex. G at 32). The motion court denied Petitioner's claim, and the Missouri Court of Appeals affirmed, finding that the record refuted his allegations that defense counsel opened the door to evidence of his post-<u>Miranda</u> silence. (Resp't Ex. B at 49, Resp't Ex. J at 6-7). The court of appeals held: "[I]t was clear that defense counsel was attempting to elicit evidence that [Petitioner] had turned himself in without eliciting evidence that he had cooperated with police . . . ." (Resp't Ex. J at 6). The court concluded that "[i]t was [Petitioner's] volunteered statement[s] [at trial] that opened the door" and "allowed the state to cross-examine [Petitioner] about his post-arrest silence and introduce rebuttal evidence of [Petitioner's] post-arrest silence." (Resp't Ex. J at 6-7).

The Missouri Court of Appeals properly applied <u>Strickland</u> and determined that Petitioner failed to satisfy his burden to show that counsel's performance fell outside the range of reasonable professional assistance. As trial counsel explained during the bench conference, his strategy was to enhance Petitioner's credibility by introducing evidence that he turned himself in to police. In doing so, trial counsel took a calculated risk that either the questioning or Petitioner's answers could be perceived as opening the door to evidence of Petitioner's post-

arrest silence. "Although hindsight may make a decision appear unwise or unsound, when scrutinizing counsel's performance a court 'must be highly deferential.'" <u>Underdahl v. Carlson</u>, 381 F.3d 740, 743 (8th Cir. 2004) (quoting <u>Strickland</u>, 466 U.S. at 689)). The Missouri Court of Appeals' conclusion that trial counsel was not ineffective was not contrary to or an unreasonable application of <u>Strickland</u>, and was not based upon an unreasonable determination of the facts. Accordingly, Petitioner's ground three is denied.

### D. Ground five – Trial counsel's failure to object to improper impeachment.

In ground five, Petitioner asserts that trial counsel provided ineffective assistance because he failed to object to the prosecutor's "improper and inaccurate impeachment of Travis Ratliff." Respondents counter that the Missouri Court of Appeals reasonably determined the facts and applied the <u>Strickland</u> standard when it held that Petitioner failed to demonstrate that he suffered prejudice as a result of counsel's alleged error.

At trial, the State presented Travis Ratliff, Petitioner's friend who drove the car on the day of the shooting. On direct examination, Mr. Ratliff, testified that he could not recall who asked to stop at the novelty store because "I was listening to the music at the time." Mr. Ratliff stated that Petitioner and Mr. Ward exited the car at the novelty shop, but he denied seeing them enter the store, explaining, "I really wasn't paying attention to where they go. I was on the radio, talking to the guy behind me."

On cross-examination, the prosecutor established that she had deposed Mr. Ratliff the previous week and asked him whether he recalled stating that he saw Petitioner and Mr. Ward enter the store:

> [PROSECUTOR]: [D]o you remember telling me, I'm sorry, telling
> defense counsel that [Petitioner] went into a store like a liquor store?
> [RATLIFF]: No, ma'am.
> [PROSECUTOR]: You don't remember saying that?

[RATLIFF]:  No, ma'am.
[PROSECUTOR]:  You don't remember or you didn't say that?
[RATLIFF]:  I don't remember saying it.
[PROSECUTOR]:  Okay.  So it's possible if the deposition says that you said that [Petitioner] went into a store like a liquor store, he was gone about five, six, maybe seven minutes and [Mr. Ward] went with him, that that's the truth.
[RATLIFF]:  It's possible, yeah.
[PROSECUTOR]:  You could have said that on Thursday of last week?
[RATLIFF]:  Yes, ma'am.
[PROSECUTOR]:  But now all of a sudden you don't remember?
[RATLIFF]  No ma'am.
[PROSECUTOR]:  No all of a sudden you're in the room with [Petitioner], you don't remember?
[RATLIFF]:  I don't remember, no, ma'am.

When the prosecutor asked Mr. Ratliff whether he remembered stating at his deposition that Petitioner "told you to stop here 'cause he wanted to buy a T-shirt and a hat?," Mr. Ratliff answered, "Yes, ma'am."

The prosecutor again impeached Mr. Ratliff with his deposition testimony when he testified that he did not hear the gunshots.  When Mr. Ratliff denied stating at his deposition that he and Mr. Burrell heard the gunshots, the prosecutor directed Mr. Ratliff to read the following statement from his deposition:  ". . . . eventually we heard a couple gunshots.  Not loud, but you could tell that they were – you could hear a popping sound."  When the prosecutor asked, "Isn't that the truth?  You heard gunshots that day?," Mr. Ratliff conceded, "I heard sound that sounded like it could have been gunshots, yeah."  Mr. Ratliff also testified that he observed Petitioner and Mr. Ward run out of the store, and, on his redirect examination, Mr. Ratliff confirmed that Petitioner and Mr. Ward had entered the store.

In his motion for post-conviction relief, Petitioner claimed that trial counsel was ineffective "in failing to object to the State's improper and inaccurate impeachment of Travis Ratliff."  (Resp't Ex. G at 34).  More specifically, Petitioner complained that, by inaccurately

implying that Mr. Ratliff changed his testimony that he did not observe Petitioner enter the store, the prosecutor "was allowed to imply that Mr. Ratliff was being manipulated or threatened by [Petitioner]" and to "argue that Mr. Ratliff's favorable testimony for [Petitioner] was fabricated." (Id. at 35).

The motion court denied Petitioner's Rule 29.15 motion, and the Missouri Court of Appeals affirmed on the ground that Petitioner failed to demonstrate Strickland prejudice. (Resp't Ex. J at 8). The court explained that the alleged inconsistency in Mr. Ratliff's statements regarding whether he observed Petitioner enter the store "was of no consequence because Mr. Ratliff consistently testified that [Petitioner] was one of the two men he saw *leave* the store, and he eventually confirmed that it was his testimony that [Petitioner] and another *entered* the store." (Rep't Ex. J at 9). In addition, the court found unpersuasive Petitioner's assertion that he suffered prejudice because the prosecutor used the purported change in testimony to suggest that Petitioner improperly influenced or coerced Mr. Ratliff's testimony. (Id.). The court found that, contrary to Petitioner's claim, the State's position was not that Petitioner influenced or coerced Mr. Ratliff's changed testimony, but rather that Mr. Ratliff's testimony "was colored by his allegiance to [Petitioner] (and, thus, not coercion)[.]"[3] (Id.).

As previously discussed, the "question under § 2254(d) is not whether [the federal habeas court] believe[s] the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." Kennedy v. Kemna, 666 F.3d 472, 477 (8th Cir. 2012) (internal quotation omitted). Petitioner provides no basis for a finding that the Missouri Court of Appeals' application of the Strickland standard was

---

[3] In support, the court cited the prosecutor's closing statement, in which she argued that, despite Mr. Ratliff's twelve-year friendship and allegiance with Petitioner, "even he said his friend of 12 years is the guy that walked in with Zedric Ward that day." (Id.).

"contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented in state court."  Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010).  Accordingly, ground five is denied.

### E.  Ground seven – Trial counsel's failure to impeach Mr. Ward.

In ground seven, Petitioner claims that trial counsel was ineffective "in failing to impeach State's witness Zedric Ward, regarding the caliber of the gun that he was in possession of on December 12, 2006."  In response, Respondents assert that Petitioner defaulted this claim in state court and, even if it were not defaulted, Respondents failed to demonstrate "a reasonable probability that the result of trial would have been different if trial counsel had attempted to impeach Mr. Ward on this issue."

In his amended motion for post-conviction relief, Petitioner claimed that trial counsel was ineffective in failing to impeach Mr. Ward regarding the caliber of gun he was carrying on December 12, 2006.  (Resp't Ex. G at 36).  Petitioner alleged that Mr. Ward initially told the police he was in possession of a .38 caliber gun on the date in question, but he stated in his deposition that he was carrying a .32 caliber gun on that day.  (Id.)  Petitioner claimed that, because the firearm used to kill the victim was a .38 caliber, evidence that Mr. Ward possessed "a .38 instead of a .32 would have supported [Petitioner's] defense that Mr. Ward was a more active participant than he claimed and that [Petitioner] was not present."  (Id.).  Petitioner complained that "[t]rial counsel did not impeach Mr. Ward with this inconsistency *at trial* and failed to bring up the issue in any manner."  (Id.) (emphasis added).

In its findings and conclusions of law, the motion court first noted that, because Mr. Ward did not testify at trial to the caliber of gun he possessed on December 12, 2006, "there was

no testimony to impeach regarding the caliber of the gun he had." (Resp't Ex. G at 50). The motion court then found that "it is not clear how the caliber of the gun Mr. Ward had would have provided a defense for [Petitioner]." (Id.).

Petitioner appealed the denial of his claim to the Missouri Court of Appeals on the ground that the "motion court once again misunderstood the claim." (Resp't Ex. H at 28). In his brief, Petitioner explained that the motion court's "ruling that there was no testimony to impeach is clearly erroneous, because the allegation was that trial counsel should have impeached Ward's *deposition* testimony that he had a .32 with his prior statements to the police that it was a .38." (Id. at 30) (emphasis in original).

The Missouri Court of Appeals found that Petitioner's claim on appeal differed substantially from that raised in his motion for post-conviction relief and "any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal." (Resp't Ex. J. at 11) (quoting Johnson v. State, 333 S.W.3d 459, 471 (Mo. banc 2011)). The court explained that Petitioner "abandon[ed] the specific claim made in his motion that counsel was ineffective for failing to impeach Mr. Ward 'at trial,' and now argues that counsel was ineffective because he did not impeach Mr. Ward's 'deposition' testimony." (Resp't Ex. J. at 11).

"As a rule, a state prisoner's habeas claims may not be entertained by a federal court 'when (1) a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'" Maples v. Thomas, 132 S. Ct. 912, 922 (2012) (quoting Walker v. Martin, 562 U.S. 307, 315 (2011)). "[F]ederal courts do not look at whether state courts have correctly applied their own procedural rules. They simply determine whether those procedural rules were applied to bar the claim." Clemons v. Luebbers, 381 F.3d 744, 752-53

(8th Cir. 2004). See also Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Sloan v. Delo, 54 F.3d 1371, 1378 (8th Cir. 1995). Where, as here, the Missouri Court of Appeals found that state procedural rules barred review of Petitioner's ineffective assistance of counsel claim, "the petitioner is left to show cause and prejudice [to excuse the default] or actual innocence." Clemons, 381 F.3d at 751.

In this case, Petitioner failed to demonstrate or even allege cause for his procedural default. Nor does Petitioner claim that a fundamental miscarriage of justice will result if this Court does not review his defaulted claim on the merits. Finally, as discussed infra in the analysis of Petitioner's ground eleven, Petitioner fails to demonstrate actual innocence. For the foregoing reasons, Petitioner's ground seven is denied.

### F. Ground nine – Trial counsel's failure to litigate distinctive appearance.

In ground nine, Petitioner claims that trial counsel was ineffective in "failing to litigate the issue of Petitioner's distinctive appearance." Respondents counter that the Missouri Court of Appeals properly concluded that "the jury did hear evidence about [Petitioner] having a mark on his face" and "there is no reasonable probability that emphasizing a feature of [Petitioner's] face would have made a difference in the verdict."

In his motion for post-conviction relief, Petitioner asserted that he had "a distinctive mark on his cheek" that "was visible at a great distance and would make [Petitioner] readily and easily distinguishable from other African-American men in their twenties." (Resp't Ex. G at 37). Petitioner maintained that trial counsel provided ineffective assistance because he did not argue that the eyewitnesses' failure to describe the distinctive mark "proved that: (1) [Petitioner] wasn't the shooter and (2) that the co-defendants were lying regarding [Petitioner's] previous visits to the store." (Id.).

The motion court denied Petitioner's claim without an evidentiary hearing, and Petitioner appealed. (Resp't Ex. H). The Missouri Court of Appeals applied the <u>Strickland</u> standard to determine whether counsel was ineffective in failing to litigate the issue of Petitioner's distinctive appearance. (Resp't Ex. J). In regard to trial counsel's alleged error, the court found that "the fact that [Petitioner] had a scar was in evidence through testimony and a photograph, and [Petitioner] was present in the courtroom where his scar would presumably be apparent to the jury." (<u>Id.</u> at 13). As to prejudice, the court held that Petitioner "cannot show that the outcome of the proceeding would have been different because the two eyewitnesses testified that they did not see [Petitioner's] face, so they could not have seen [Petitioner's] scar to allow them to recognize him." (<u>Id.</u>).

The Petitioner provides no basis for a finding that the Missouri Court of Appeals' application of the <u>Strickland</u> standard was "contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented in state court." <u>Cole</u>, 623 F.3d at 1187. Accordingly, ground nine is denied.

### G. Ground eleven – Newly discovered evidence of actual innocence.

In ground eleven, Petitioner claims that evidence not available at the time of trial demonstrates that he is actually innocent of the crimes of which he was convicted. More specifically, Petitioner asserts that Mr. Ratliff's post-trial "recantation statements" prove Petitioner's innocence. Respondents counter that Petitioner "failed to make a valid claim of actual innocence" because (1) actual innocence is not an independent claim and (2) Petitioner presented no documentation of Mr. Ratliff's alleged recantation.

An an initial matter, the court notes that Petitioner included this claim in his amended Rule 29.15 motion but did not raise it on appeal. Failure to raise a claim in post-conviction appeal constitutes abandonment of the claim. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). See also Cox v. Burger, 398 F.3d 1025, 1030 (8th Cir. 2005).

Based on his habeas petition, it is not clear whether Petitioner's alleges newly discovered evidence and actual innocence as a freestanding claim[4] or as a gateway to consideration of an otherwise defaulted constitutional claim. To satisfy the lower threshold for a "gateway" actual innocence claim, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). This standard is strict and "a party generally cannot demonstrate actual innocence where there is sufficient evidence to support a conviction." Wadlington v. United States, 428 F.3d 779, 783 (8th Cir. 2005). Moreover, "recantations of testimony generally are viewed with suspicion." Id. at 784.

Here, even without Mr. Ratliff's testimony at trial, the state presented ample evidence of Petitioner's role in the December 12, 2006 shooting. Mr. Ward testified that, after Petitioner declared his intent to rob the store, he and Petitioner entered the store carrying guns. Mr. Ward testified that Petitioner shot Victim and subsequently stated "that he killed him." Likewise, Mr. Burrell testified that Petitioner asked Mr. Ratliff to stop at the store and walked inside with Mr.

---

[4] The Supreme Court has not resolved "whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggins v. Perkins, 133 S.Ct. 1924, 1931 (2013). "The Court has established, however, that the threshold for any such claim, if it were recognized, would be 'extraordinarily high.'" Dansby v. Hobbs, 766 F.3d 809, 817 (8th Cir. 2014) (quoting Herrera v. Collins, 506 U.S. 390, 417 (1993)). "[O]n a freestanding claim of actual innocence, it is not sufficient that a petitioner shows it is 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "The 'extraordinarily high' threshold, if recognized, would be even higher." Id.

Ward.  Mr. Burrell stated that he heard gunshots and observed Petitioner and Mr. Ward flee the store carrying guns.   Given the abundant evidence of Petitioner's guilt, the Court does not believe that any reasonable juror presented with Mr. Ratliff's alleged recantation would, more likely than not, have entertained a reasonable doubt as to Petitioner's guilt.  See Battle v. Delo, 64 F.3d 347, 353 (8th Cir. 1995).  Ground eleven is denied.

### H.  Grounds twelve and thirteen – Post-conviction counsel's failure to raise claims.

In ground twelve, Petitioner claims that post-conviction counsel was ineffective for failing to allege in Petitioner's amended Rule 29.15 motion that trial counsel provided ineffective assistance by not investigating and interviewing the 911 caller.  In ground thirteen, Petitioner asserts that post-conviction counsel was ineffective for failing to argue he received ineffective assistance at trial "due to insufficient funds, inadequate staffing and training and work overload, all of which constitute a total breakdown of the Missouri Public Defender System that employed trial counsel."

"There is no federal constitutional right to the effective assistance of post-conviction counsel."[5]   Clay v. Bowersox, 367 F.3d 993, 1005 (8th Cir. 2004) (quoting Coleman v. Thompson, 501 U.S. 722, 752 (1991)).   Therefore, any inadequacies in Petitioner's post-conviction representation do not establish grounds for habeas relief.  Because this court is barred from considering the merits of the instant claims as grounds for habeas corpus relief, grounds twelve and thirteen are denied.

---

[5] Although ineffective assistance of post-conviction counsel is not an independent ground for habeas relief, it may constitute cause excusing a petitioner's procedural default  Martinez v. Ryan, 132 S.Ct. 1309, 1320-21 (2012).  Petitioner does not present this allegation.

**I.   Grounds four, six, eight, and ten – Post-conviction motion court error.**

In grounds four, six, eight, and ten, Petitioner claims that the post-conviction motion court erred in denying the claims of ineffective assistance that he raises in grounds three, five, seven, and nine.  Respondents assert that grounds four, six, eight, and ten are "duplicative" of grounds three, five, seven, and nine.

Petitioner's claims of motion court error are not cognizable in a federal habeas case.  The Eighth Circuit Court of Appeals explained that "Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding." Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990). "Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." Id.  Thus, Petitioner's claims that the motion court erred in denying his claims for post-conviction relief are not cognizable in his federal petition.  Petitioner's grounds four, six, eight, and ten are denied.

## V.   Conclusion

Petitioner's petition for relief pursuant to 28 U.S.C. § 2254 is denied because:  grounds seven and eleven are procedurally barred; grounds four, six, eight, ten, twelve, and thirteen are not cognizable; and grounds one, two, three, five, and nine lack merit.  Further, because Petitioner has made no showing of denial of a constitutional right, the Court will not issue a certificate of appealability.  See U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

**IT IS HEREBY ORDERED** that Chris Koster, Attorney General of the State of Missouri, is **ADDED** as a Respondent.

**IT IS FURTHER ORDERED** that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that any motion by Petitioner for a certificate of appealability will be **DENIED.**

A judgment dismissing this case is filed herewith.


_____

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of July, 2016